IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALAMO DEFENDERS DESCENDANTS ASSOCIATION, LEE WHITE, CHARISMA CONDELLO VILLARREAL and SAMANTHA WHITE <br><br> *Plaintiffs,* <br><br> vs. <br><br> ALAMO TRUST, INC, DOUGLASS W. MCDONALD, CEO of the ALAMO TRUST, INC., TEXAS GENERAL LAND OFFICE and GEORGE P. BUSH, COMMISSIONER of the GENERAL LAND OFFICE of the STATE of TEXAS <br><br> *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. 5:18-cv-1030 |

**PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTION**

TO THE HONORABLE COURT:

NOW COMES ALAMO DEFENDERS DESCENDANTS ASSOCIATION (hereinafter, "ADDA"), LEE WHITE, CHARISMA CONDELLO VILLARREAL (hereinafter, "VILLARREAL") and SAMANTHA WHITE, the Plaintiffs, complain of DOUGLASS W. MCDONALD, Chief Executive Officer of the ALAMO TRUST, INC (hereinafter, "ALAMO CEO") and ALAMO TRUST, INC (hereinafter, "ALAMO TRUST"), TEXAS GENERAL LAND OFFICE (hereinafter, "GLO") and GEORGE P. BUSH, Commissioner of the General Land Office of the State of Texas (hereinafter, "COMMISSIONER BUSH"), the Defendants, and causes of action shows:

## INTRODUCTION

1. This case is brought under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and under Article I, § 8 of the Constitution of the State of Texas challenging Defendants' restriction on Plaintiffs' right to engage in protected speech in a public forum created by Defendants based on the content and viewpoint of Plaintiffs' Message. Specifically, Defendants prohibited Plaintiffs VILLARREAL and Samantha White from wearing t-shirts on Alamo Property with the statement "Don't Move the Cenotaph.". Defendants' assertion that Plaintiffs' message regarding the Cenotaph violates its Policy ("Free Speech Restriction"), operates as a prior restraint on Plaintiffs' speech.

2. Plaintiffs seek a declaration that Defendants violated their clearly established constitutional rights as set forth in this Complaint; a declaration that Defendants' Free Speech Restriction violates the United States Constitution and 42 U.S.C. § 1983 as set forth in this Complaint; a preliminary and permanent injunction enjoining the enforcement of Defendants' Free Speech Restriction as set forth in this Complaint; and nominal damages of $18.36 for the past loss of Plaintiffs' constitutional rights. Plaintiffs also seek an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

3. Furthermore, Plaintiff Alamo Defenders Descendants Association ("ADDA") was denied permission to gather inside the Alamo Chapel for a Christian religious candlelight memorial and prayer service which has been a tradition allowed by the Alamo for the past twenty years, while Native American groups have been allowed to continue their traditional prayer service in the Alamo Chapel.

**PARTIES**

4. The Plaintiff Alamo Defenders Descendants Association ("ADDA") is a Texas nonprofit corporation composed of members that are direct descendants or lateral descendants of the Alamo Defenders who were present inside the Alamo from February 23rd through March 6th, 1836 in service of the Provisional Government of Texas. Heroes of the Alamo include the soldiers, couriers, scouts and non-combatants (survivors) sustaining the Alamo during this historical time. Lee White is the president and founder of the ADDA. The ADDA is located at: 393 C Road, Sutherland Springs, TX 78161-4714

5. Plaintiff Lee White is the Chair of ADDA and is an individual citizen of the State of Texas residing in San Antonio, Bexar County, Texas.

6. Plaintiff Charisma Villarreal is an individual citizen of the State of Texas residing in Helotes, Bexar County, Texas.

7. Plaintiff Samantha White is an individual citizen of the State of Texas residing in San Antonio, Bexar County, Texas.

8. The Defendant ALAMO TRUST, INC., a Texas nonprofit corporation, which may be served with citation at its registered agent, Capitol Corporate Services, Inc., located at 206 E. 9th Street, Suite 1300, Austin, TX 78701-4411.

9. Defendant DOUGLASS W. MCDONALD, CEO of the ALAMO TRUST, INC. is an individual. Service of process may be accomplished by personal delivery of the citation to 300 Alamo Plaza, San Antonio, Texas 78205.

10. Defendant the Texas General Land Office is an administrative agency of the State of Texas. Service of process may be accomplished by personal delivery of the citation to Commissioner George P. Bush, at 1700 N. Congress Ave., Suite 935, Austin, Texas 78701-1495.

11. Defendant George P. Bush is sued in his official capacity as Commissioner of the Texas General Land Office. Service upon Commissioner Bush may be accomplished by personal delivery of citation to him, at 1700 N. Congress Ave., Suite 935, Austin, Texas 78701-1495.

## JURISDICTION/VENUE

12. This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

13. Plaintiffs Supplemental State Law claim is brought pursuant to this Court's supplemental jurisdiction as provided for in 28 U.S.C. § 1367.

14. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. Plaintiffs' claim for nominal damages is authorized by 42 U.S.C. § 1983.

15. This Court may enter an award of attorney's fees pursuant to 42 U.S.C § 1988.

16. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## BACKGROUND/FACTS

17. This case stems from the initiative by the City of San Antonio and the GLO to create a plan for the redevelopment of the Alamo Plaza and the surrounding area, known officially as the Alamo Master Plan, but peddled to the public as "Reimagine the Alamo" (hereinafter, "REIMAGINE PLAN"). The REIMAGINE PLAN has been highly controversial and various groups have organized politically in opposition to the REIMAGINE PLAN for a variety of

reasons. Among the most controversial issues at the heart of the REIMAGINE PLAN is the proposal to relocate the Alamo Cenotaph, a marble and granite monument officially titled "The Spirit of Sacrifice" (hereinafter, "CENOTAPH"). The CENOTAPH was erected by the State of Texas during the Texas Centennial (1936) celebrations to memorialize the ultimate sacrifice of the Alamo Defenders, who gave their lives for liberty at the Battle of the Alamo (1836). Plaintiffs have been outspoken critics of the REIMAGINE PLAN, which proposes to relocate the monument despite a deed restriction, a city ordinance and the public promise by officials in 1936 that the CENOTAPH would be a permanent monument to the Heroes of the Alamo at its present location. The proposed removal/relocation of the CENOTAPH has been a highly public topic of interest with numerous rallies, press conferences, contested hearings, news articles, blog posts, social media attention and even several local and state officials and candidates for public office running on a platform to save the CENOTAPH.

18.     Plaintiffs attended a recent event located at the Alamo at which the Plaintiffs were denied there fundamental First Amendment right to speak out regarding the plan to relocate the CENOTAPH. More specifically, the ALAMO CEO removed Plaintiffs VILLARREAL and SAMANTHA WHITE, in two separate incidents, from the grounds specifically because they were wearing a t-shirts that stated "Don't Move the Cenotaph!".

19.     On or about September 14, 2018, Plaintiff VILLARREAL arrived at the Alamo to attend a press conference by State Representative Kyle Biedermann. As soon as the press conference concluded, Plaintiff VILLARREAL, stayed behind to talk with various people that were in attendance and to take photos of the CENOTAPH and the Alamo. After Plaintiff VILLARREAL took photos in front of the CENOTAPH, she proceeded to her car and was reviewing the photos when she heard on the radio that that the Mayor of San Antonio and

5

possibly COMMISSIONER BUSH may be speaking at the Alamo. Plaintiff VILLARREAL returned to the Alamo to see if another press conference was being held. However, neither the Mayor nor COMMISSIONER BUSH were speaking, so Plaintiff VILLARREAL decided to take more pictures and proceeded to enter the Alamo Chapel.

20.     Plaintiff VILLARREAL did not even make it to the metal detectors located inside the Alamo before she was approached by an Alamo Ranger.  The Alamo Rangers are the security force for the Alamo.  The Ranger stated to Plaintiff VILLARREAL that she could not stay because her shirt was "part of the protest outside" and he motioned his hand towards the CENOTAPH. He then instructed VILLARREAL that if she wanted to come back, she would have to turn her shirt inside out or change it. He instructed VILLARREAL that she could go across the street to change in the bathroom in the gift shop. He then escorted her to the door. As he opened the door to let her out he was talking into his walkie-talkie to another guard posted outside the Alamo Chapel, telling him that Plaintiff was on her way out the front door. He held the door open for her and she observed the outside guard intently watching her until she went back across the plaza to sit down.

21.     Plaintiff was then informed by the ALAMO CEO that ALAMO TRUST, INC. has a policy that prohibits clothing, signs, images or expressions of a political nature in and around the Alamo Chapel on state-owned property.  Such a policy is shocking in that it violates the fundamental freedom to engage in peaceful speech and is a violation of the principals, rights and liberties for which the heroes of the Alamo fought and sacrificed their lives.  In this case, the Plaintiff was doing nothing more than passively wearing a t-shirt that stated: "Don't Move the Cenotaph". Such expression was a peaceful statement or expression regarding a matter of public concern.

22.     Further, the Alamo is government property and has throughout its history, up until the present, has been used by the public for purposes of assembly and debate. Over the years, the Alamo has been the central point for public announcements, press conferences, campaign speeches, protests, celebrations, parades and government related assemblies. What distinguishes those activities with the activity of Plaintiff VILLARREAL is that the ALAMO CEO disagrees with and or does not like the content of her speech.  As stated above, the GLO and the City of San Antonio are pushing for the REIMAGINE PLAN which involves shutting down roads, taking land and businesses out of the plaza and, more importantly, removing or relocating the CENOTAPH, while Plaintiff VILLARREAL's t-shirt expressed opposition to it.

23.     In a separate incident on the same day, Plaintiff Samantha White was approached by an Alamo Ranger and instructed to leave and not return unless she changed her shirt or turned it inside out.

24.     What is shocking and telling is the fact that the ALAMO TRUST, GLO and ALAMO CEO do not in fact follow the policy communicated to Plaintiffs VILLARREAL and Samantha White, but allow partisan groups to hold public political assemblies at the Alamo, provided that they do not criticize or state opposition to their governmental actions.  Recently, Congressman Robert Francis "Beto" O'Rourke held a public press conference at the Alamo along with several of his political supporters.  Mr. O'Rourke, a current Congressman representing El Paso and candidate for United States Senator, was allowed to make a campaign speech at the footsteps of the Alamo and was allowed to take photos with his supporters donning "Beto for Texas" t-shirts on the same state-owned grounds that are supposedly the subject of the Alamo's FREE SPEECH RESTRICTION.  At no time was Rep. O'Rourke, or his campaign t-shirt wearing supporters asked to leave or remove their signs or clothing.  Again, there is no doubt that the ALAMO

TRUST, GLO and ALAMO CEO only restrict speech that is critical of them, as is the Plaintiffs position on their REIMAGINE PLAN.

25. The ALAMO CEO, ALAMO TRUST and GLO have acted in other ways to restrict and single out those in opposition to the REIMAGINE PLAN. Since its public opposition to the REIMAGINE PLAN, Plaintiff ADDA, has been punitively denied the use of the Alamo Chapel to hold their traditional Christian candlelight and memorial service for their ancestors who died fighting at the Alamo (hereinafter, "PRAYER SERVICE"). For more than 20 years prior, members of the ADDA have gathered inside the Alamo Chapel, on the anniversary of the fall of the Alamo, for a PRAYER SERVICE in honor of their ancestors who died at the Battle of the Alamo. At this PRAYER SERVICE the Alamo garrison roll call was read, and a descendant of each person named stood to honor their Alamo ancestor. Those in attendance, led by a Christian Minister, opened and closed the service with prayer. As of March 2018, that roll call is now silent.

26. However, after much discussion with ALAMO TRUST, INC. and ALAMO CEO about holding their annual PRAYER SERVICE in 2018, Plaintiffs ADDA and LEE WHITE were informed in an email that "The only group allowed to hold a ceremony inside the church will continue to be the Native American group." The leader of the Native American group that was allowed to hold its religious ceremony in the Alamo Chapel this year is also a member of the Alamo Citizens Advisory Committee, which according to the City of San Antonio's website "was established by City Council in 2014 to update the 1994 Alamo Plaza Study Committee Report and Recommendations, create a vision and guiding principles for the redevelopment of Alamo Plaza and the surrounding area, and assisting in the development of the scope of work for a request for qualifications (RFQ) for development of a master plan for the Alamo area." In other

8

words, one of the key committees to approve the REIMAGINE PLAN. Prohibiting ADDA's PRAYER SERVICE, while allowing the Native American ceremony constitutes religious preference and is a violation of the Equal Protection provision of the 14th Amendment and the religious freedom provision of the 1st Amendment of the United States Constitution.

## FIRST CLAIM FOR RELIEF

### (First Amendment)

Plaintiffs hereby incorporate by reference all stated paragraphs.

27. By reason of the aforementioned Free Speech Restriction, which includes Defendants' Policy, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to engage in protected speech in a public forum in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

28. Defendants' Free Speech Restriction, facially and as applied to Plaintiffs' speech, is content- and viewpoint-based in violation of the Free Speech Clause of the First Amendment.

29. Defendants' Free Speech Restriction operates as a prior restraint on Plaintiffs' speech; therefore, it comes to this Court bearing a heavy presumption against its constitutional validity.

30. Defendants' Free Speech Restriction, facially, and as applied to Plaintiffs' speech, is unreasonable and an effort to suppress expression merely because public officials oppose the speaker's view, including the view expressed by Plaintiffs.

31. Defendants' Free Speech Restriction, facially and as applied to Plaintiffs' Speech, offends the First Amendment by granting a public official unbridled discretion such that the

9

official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective reasons.

32.     Defendants' Free Speech Restriction, facially and as applied to Plaintiffs' speech, provides no objective guide for distinguishing between permissible and impermissible speech in a non-arbitrary, viewpoint-neutral fashion as required by the First Amendment.

33.     In addition, the Defendants deny to the Plaintiffs the right to the free exercise of religion without unreasonable restraints.  Specifically, in 2018, Plaintiff ADDA was denied permission to gather inside the Alamo Chapel for a Christian candlelight memorial and prayer service which has been a tradition allowed by the Alamo for the past twenty years, while Native American groups were allowed to continue their traditional prayer service in the Alamo Chapel.

34.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages of $18.36.

## SECOND CLAIM FOR RELIEF

### (Equal Protection—Fourteenth Amendment)

Plaintiffs hereby incorporate by reference all stated paragraphs.

35.     By reason of  the aforementioned free speech restriction and free exercise of religion, which includes Defendants' Policy, created, adopted, and enforced under color of state law, Defendants have unconstitutionally deprived Plaintiffs of the equal protection of the law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, in that Defendants are preventing Plaintiffs from expressing a message in a public forum

based on the content and viewpoint of the message, thereby denying the use of this forum to those whose views the Defendants finds unacceptable.

36.   In addition, Plaintiff ADDA was denied permission to gather inside the Alamo Chapel for a Christian religious candlelight memorial and prayer service which has been a tradition allowed by the Alamo for the past twenty years, while Native American groups are still allowed to continue their traditional prayer service in the Alamo Chapel. Such discriminatory application of the law denies the Plaintiffs the equal protection required by the Constitution of the United States.

37.   As a direct and proximate result of Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages of $18.36.

### THIRD CLAIM FOR RELIEF

### (Due Process—Fourteenth Amendment)

Plaintiffs hereby incorporate by reference all stated paragraphs.

38.   By reason of the aforementioned Free Speech Restriction, which includes Defendants' Policy, created, adopted, and enforced under color of state law, Defendant has unconstitutionally deprived Plaintiffs of the due process of law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

39.   It is a basic principle of due process that a regulation is void for vagueness if its prohibitions are not clearly defined. Defendants' Restriction, facially and as applied to Plaintiffs' Speech, offends the Fourteenth Amendment's guarantee of due process by granting a public

official unbridled discretion such that the official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective reasons. Defendants' Free Speech Restriction facially and as applied to Plaintiffs' Speech is unconstitutionally vague in violation of the Fourteenth Amendment.

40. In addition, Defendants' Restriction, facially and as applied to Plaintiffs' ability to exercise its religious ceremony in the Alamo chapel, offends the Fourteenth Amendment's guarantee of due process by granting a public official unbridled discretion such that the official's decision to limit the religious ceremony and allowing other groups such as Native Americans to continue to use the Alamo chapel is not constrained by objective criteria, but may rest on ambiguous and subjective reasons. Defendants' restriction is facially and as applied to Plaintiffs' religious ceremony is unconstitutionally vague in violation of the Fourteenth Amendment.

41. As a direct and proximate result of Defendants' violation of the Due Process Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages of $18.36.

**FOURTH CLAIM FOR RELIEF**

**(Supplemental Claims Under the Texas Constitution)**

42. Plaintiffs bring these Supplemental Claims as provided for in 28 U.S.C section 1367 to the extent that Article I, § 8 of the Texas Constitution is more than co-extensive with the First Amendment to the Constitution of the United States.

43. Plaintiffs also bring these Supplemental Claims alleging violations of other provisions of the Bill of Rights enshrined in the Texas Constitution, as set forth below.

44. Defendants free speech restriction violated the rights guaranteed Plaintiffs by the Constitution of the State of Texas on its face and as applied to Plaintiffs, in that they abridge and restrain the Plaintiffs right to free expression, in violation of Article I, § 8 of the Texas Constitution.

45. Defendants' Free Speech Restriction operates as a prior restraint on Plaintiffs' speech; in violation in violation of Article I, § 8 of the Texas Constitution.

46. Defendants' Free Speech Restriction, facially, and as applied to Plaintiffs' speech, as the restriction constitutes a "chilling effect" on the constitutionally protected speech and expression in violation of Article I, § 8 of the Texas Constitution.

47. Defendants' Free Speech Restriction, facially and as applied to Plaintiffs' Speech, grants a public official unbridled discretion such that the official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective reasons.

48. Defendants' Free Speech Restriction, facially and as applied to Plaintiffs' speech, provides no objective guide for distinguishing between permissible and impermissible speech in a non-arbitrary, viewpoint-neutral fashion.

49. Defendants' Free Speech Restriction violates the rights guaranteed to the Plaintiffs by the Constitution of the State of Texas, on its face and as applied to Plaintiffs, in that they deny equal rights under the law in violation of Article I, § 3 of the Constitution of the State of Texas. This violation of equal rights occurs because the restriction is arbitrary, oppressive and capricious.

50.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages of $18.36.

## DAMAGES

51.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages of $18.36.

## ATTORNEY FEES

52.     It was necessary for the Plaintiffs to secure the services of Adrian A. Spears II and Art Martinez de Vara to pursue this matter and to file and litigate this lawsuit.  Should Plaintiffs prevail in this matter, Plaintiffs respectfully request that the Court award reasonable and necessary attorney's fees and costs incurred in prosecuting this suit as permitted under 42 U.S.C. § 1988 and other applicable law.

## PRAYER

WHEREFORE, the Plaintiffs request that the Defendants be cited to appear and answer, and that on final trial, the Plaintiffs have the following:

A)   to declare that Defendants violated the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

B)   to preliminarily and permanently enjoin Defendants' Free Speech and free exercise of religion restriction, which includes Defendants' Policy, as set forth in this Complaint;

C)   to award Plaintiffs nominal damages for the past loss of their constitutional rights as set forth in this Complaint;

D)  to award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

E)  to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

**THE MARTINEZ DE VARA LAW FIRM, PLLC**
PO Box 377
Von Ormy, Texas 78073
Tel. (210) 622-0323
Fax. (210) 622-4021

By:  /s/: Adrian A. Spears, II
Adrian A. Spears, II
Texas Bar No. 24049318
Email: adrian@aspearslaw.com
Art Martinez de Vara
Texas Bar No. 24060230
Email:  art@mdv-law.com

**ATTORNEYS FOR PLAINTIFFS**